IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MANISH KANUBHAI PATEL,**

    **Petitioner,**

**v.**                                              **Civil Action No. 2:07cv105**
                                                           **(Judge Maxwell)**

**WAYNE A. PHILLIPS, Warden,**

    **Respondent.**

## REPORT AND RECOMMENDATION

The petitioner initiated this case on December 19, 2007, by filing an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 in which he seeks an order directing the Bureau of Prisons ("BOP") to transfer him to a halfway house for t he last six months of his term of imprisonment. The petitioner paid the required filing fee on December 20, 2007.

On April 7, 2008, the undersigned made a preliminary review of the file and determined that summary dismissal was not warranted at that time. Consequently, the respondent was directed to show cause why the petition should not be granted. On May 8, 2008, the respondent filed a Motion to Dismiss, and on May 9, 2008, a Roseboro Notice was issued. On June 6, 2008, the petitioner filed a response and again requested that the Court direct the respondent to give him six months in a CCC or home confinement. This case is before the undersigned for a report and recommendation pursuant to LR PL P 83.09, et seq.

### I. Factual and Procedural History

On May 16, 2007, the petitioner was sentenced in the United States District Court for the

Western District of North Carolina to 24 months incarceration for violation of 21 U.S.C. §§ 841(b)(1)(C) and 846, Conspiracy to Possess with Intent to Distribute Methlendiosmethamphetamine. <u>See</u> dckt. 8-3, p. 2. The petitioner was committed to the custody of the BOP on October 23, 2007, and was subsequently designated to serve his sentence at FCI Morgantown. On March 13, 2008, the petitioner's unit team conducted a review of his case and drafted a recommendation for petitioner's placement in a Residential Release Center ("RRC" previously "CCC"). <u>See</u> dckt. 8-4. Based on that review, the petitioner has been recommended for 45-60 days in a halfway house and/or home confinement prior to his release. <u>Id.</u>

In the petition, the petitioner asserts that the BOP has a policy of capping an inmate's release time to a CCC at 10% [of the sentence imposed] due to a misreading of 18 U.S.C. § 3624(c). The Government contends, however, that the petition should be dismissed as moot because in deciding petitioner's CCC referral date, the BOP considered the five factors set forth in 18 U.S.C. § 3621(b) without regard to a 10% limitation. Therefore, the Government argues that the petitioner has received the only relief available to him and that there is no live case or controversy remaining.

## II. **Historical Background**

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. <u>See</u> BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624(c) which, in its opinion limited an inmate's placement in a CCC to the lessor of six months or ten percent of the inmate's sentence. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that
> a prisoner serving a term of imprisonment spends a reasonable part,
> not to exceed six months, of the last 10 per centum of the term to be

served under conditions that will afford the prisoner a reasonable
opportunity to adjust to and prepare for the prisoner's re-entry into
the community. The authority provided by this subsection may be
used to place a prisoner in home confinement. The United States
Probation System shall, to the extent practicable, offer assistance
to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits, as well as many district courts, [1] found the policy contrary to the plain meaning of 18 U.S.C. § 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment.
> The Bureau may designate any available penal or correctional facility
> that meets minimum standards of health and habitability established
> by the Bureau, whether maintained by the Federal government or
> otherwise and whether within or without the judicial district in which
> the person was convicted, that the Bureau determines to be appropriate
> and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
> (A) concerning the purposes for which the sentence to imprisonment
> was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as
> appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission
> pursuant to section 994(a)(2) of title 28.

---

[1] See Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Cato V. Menifee, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003 (collecting cases).

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in CCCs. These regulations stated that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement . . . during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20-21. The regulations expressly prohibited placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provided:

> When will the **Bureau designate** inmates to **community** confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence** being **served**, not to exceed six months.
>
> (b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21. (Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.[2]

### III. Analysis

**A. Pertinent Caselaw**

The Third Circuit Court of Appeals was the first court of appeals to address the issue raised in the instant case. In Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), the Third Circuit recognized that the various district courts to address this issue were split as to the validity of the BOP's 2005 regulations. See Woodall at 244 (collecting cases). However, after analyzing

---

[2]The undersigned notes that effective April 9, 2008, the Second Chance Act of 2007 became effective. Under that Act, the BOP must still consider placement pursuant to the five factors set forth in 18 USC § 3621. However, there is no 10% percent limitation and CCC placement can be for up to one year.

4

the conflicting opinions, the Third Circuit found the regulation unlawful. Id. Specifically, the Third Circuit found that the governing statute, 18 U.S.C. § 3621(b), "lists five factors that the BOP must consider in making placement and transfer determinations. The 2005 regulations, which categorically limit the amount of time an inmate may be placed in a Community Corrections Center ("CCC"), do not allow the BOP to consider these factors in full." Id. at 237. More specifically, the Court noted:

> [t]he regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

Id. at 244; see also Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71, 85-87 (2d Cir. 2006); Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2006).

Relying on the clear weight of authority, this District has likewise concluded that the challenged regulations are invalid. See Smith v. Gutierrez, 2:06cv121 (N.D.W.Va. Sept. 26, 2007) (Maxwell, Sr. J.); Simcoke v. Phillips, 1:07cv77 (N.D.W.Va. Sept. 18, 2007) (Keeley, C. J.); Jaworski v. Gutierrez, 5:06cv157 (N.D.W.Va. Aug. 23, 2007) (Stamp, Sr. J.); Murdock v. Gutierrez, 3:06cv105 (N.D.W.Va. July 24, 2007) (Bailey, D.J.). However, in doing so, the Court has made clear that such a decision does not entitle any inmate to an Order from this Court directing that he be immediately transferred to a CCC for the last six months of his sentence. Id. In fact, the Court has explicitly noted that the BOP's regulations are invalid only to the extent that an inmate's placement in a CCC is limited to the lessor of 10% of his sentence, or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b). Id. Thus, the invalidation

5

of the BOP's regulations merely entitles an inmate to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

Here, the BOP has done all that it is required to do. The BOP has in fact considered the five factors set forth in 18 U.S.C. § 3621(b). See dckt. 11-3 (petitioner's CCC referral form). In section 12 of the form, it specifically states that in determining in determining the petitioner's CCC referral date, the petitioner was reviewed under § 3621(b). Id. Moreover, the petitioner's case manager specifically lists the five factors and states how the petitioner's circumstances are related to those factors.[3] Thus, the petitioner has received all the consideration he is due under § 3621(b), and the prior decisions of this Court.[4]

**C. Mootness**

---

[3] Section 12 states: "Inmate Patel was reviewed under 18 U.S.C. 3621b: 1. There are available community corrections in his release area. 2. The nature and circumstances of the offense are eligible for community corrections as there was no violence or other extenuating circumstances that would preclude placement. 3. T he history and characteristics of the inmate are: he has an established residence and community ties; he has a high school diploma, an associate's degree in Science, and also attended undergraduate Engineering classes from 1991 to 1993; should have no problem securing employment during community corrections placement as he was employed prior to the instant offense; his sentence is reasonably short, and he has not been removed from the community for a particularly lengthy period. Therefore, a 45 to 60 day placement should be an adequate amount of time for him to take full advantage of the transitional services and programs. 4. There were no statements on the J&C from the sentencing court in the Western District of North Carolina regarding community corrections placement at the time of sentencing. 5. There is no pertinent policy by the Sentencing Commission. A Residential Re-Entry Center placement is being requested (halfway house and/or home confinement/electronic monitoring) and would be beneficial to secure employment and accrue release funds."

[4] In his reply to the motion to dismiss, the petitioner asserts that his sentence monitoring sheet reflects that as early as December 11, 2007, his date for placement in a CCC has been predetermined to be December 9, 2008, or the last 10% of his sentence. However, nothing on that computation sheet indicates a prerelease date of December 9, 2008. Rather, it specifically notes that the six month/10% date is not applicable. See Doc. 11-3, p. 1.

Article III of the United States Constitution, limits the jurisdiction of the federal courts to cases or controversies. Therefore, a case becomes moot when there is no viable legal issue left to resolve. See Powell v. McCormick, 395 U.S. 486, 496 (1969). If developments occur during the course of a case which render the Court unable to grant a party the relief requested, the case must be dismissed as moot. Blanciak v. Allegheny Ludlum Co., 77 F.3d 690, 698-699 (3d Cir. 1996).

The petitioner has already been granted the relief available -- proper consideration of his CCC placement under § 3621(b). To the extent that the petitioner seeks an Order from the Court directing that he be granted the full six months halfway house placement, that is simply not relief that this Court is capable of granting. See Woodall v. Federal Bureau of Prisons, 432 F.3d at 251 ( "that the BOP may assign a prisoner to a CCC does not mean that it must"); see also Crahan v. Adams, 2004 WL 4020190 *17 (S.D.W.Va. June 28, 2004) (federal prisoners have no right under § 3621(b) to placement in a halfway house for the full six months).

### IV. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (dckt. 7) be **GRANTED** and the petitioner's § 2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE.**

Within ten (10) days after being served with a copy of this /Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C.

§ 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); .

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to counsel of record via electronic means.

DATED: June 12, 2008.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE